WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

THEODORE E. NIXON,                )
                                  )
                 Plaintiff,       )
                                  )
        vs.                       )
                                  )
MOHAVE COUNTY PUBLIC WORKS        )
DEPARTMENT, et al.,               )
                                  )   No. 3:14-cv-8031-HRH
                 Defendants.      )   (Prescott Division)
_____)

O R D E R

Motion for Summary Judgment

Defendant Mohave County moves for summary judgment.[1] This motion is opposed.[2] Oral argument was requested but is not deemed necessary.

---

[1]Docket No. 53.

[2]Docket No. 55. Plaintiff, who is proceeding pro se, filed his opposition prior to the court giving him notice regarding proceedings on motions for summary judgment. On March 20, 2015, the court gave plaintiff such notice and gave plaintiff until April 6, 2015 to file an amended response. Order re Case Status, Docket No. 57. Plaintiff did not file an amended response.

-1-

Facts

Plaintiff is Theodore E. Nixon. Defendant is Mohave County, Public Works Department.[3]

Plaintiff was hired by defendant as an engineering manager. Steven Latoski, the Public Works Director for defendant, selected plaintiff for the position, with the approval of Ray Osuna, defendant's Director of Human Resources.[4] Plaintiff was an at-will employee and was subject to a 6-month probationary period when he began his employment on July 15, 2013.[5]

Plaintiff had use of a Mohave County vehicle, which was not to be used for personal travel. Latoski contends that plaintiff told him on August 7, 2013 that he "drove his County-issued vehicle on occasion to the Avi Casino in Laughlin, Nevada."[6] Latoski avers that he told plaintiff "that doing so was a violation of Mohave County rules and policies."[7]

---

[3]The other defendants were dismissed on August 20, 2014. Order re Motion to Dismiss at 9, Docket No. 34.

[4]Affidavit of Steven P. Latoski at 2, ¶¶ 6-7, Exhibit 1, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[5]Id. at 2, ¶¶ 8-9; Deposition of Theodore E. Nixon at 24:21-25:25, Exhibit 2, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[6]Latoski Affidavit at 3, ¶ 13, Exhibit 1, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[7]Id.

Plaintiff testified that he drove his County-issued vehicle to the car wash and convenience store that was next to the casino and that sometimes he would go have breakfast or lunch at the casino while his vehicle was being washed.[8] Plaintiff testified that he asked Latoski if there was a problem with this and Latoski replied "No, there's nothing wrong with it, but he wouldn't do it himself because of perception."[9] The GPS monitoring device on plaintiff's County-issued vehicle showed that he made ten trips to the Avi Casino vicinity during his employment.[10]

Vickie Holcomb was plaintiff's administrative assistant. Plaintiff testified that his relationship with Holcomb was "strained right from the get-go."[11] Plaintiff testified that Latoski warned him that Holcomb was having trouble with one of the janitors and that Latoski told him to "[d]eal with it as best you can."[12] Plaintiff testified that he spoke with Holcomb at one point about how she was treating the janitor (Alexis McKenna) and

---

[8] Nixon Deposition at 28:15-23; 31:20-25, Exhibit 2, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[9] Id. at 31:3-17.

[10] Exhibit B, Latoski Affidavit, Exhibit 1, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54. Exhibit B shows that the GPS report for plaintiff's vehicle was ran on August 9, 2013 at 4:30 p.m.

[11] Nixon Deposition at 34:4-7, Exhibit 2, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[12] Id. at 34:11-35:4.

advised her that she had to treat everyone professionally.[13] Plaintiff testified that Holcomb "bullied" McKenna and that McKenna came to him in tears one morning because of how Holcomb was treating her.[14]

Holcomb avers that she "felt that [plaintiff] was making unwelcome and unwanted sexual and harassing advances toward" her by "standing too closely to her" and "winking" at her.[15] Holcomb avers that she told her former supervisor about the situation and he in turn spoke to Latoski.[16] Holcomb further avers that on August 8, 2013, Latoski called her to his office to discuss her concerns and she told Latoski that plaintiff was also making two other Mohave County employees uncomfortable.[17] Holcomb avers that Latoski told her to file an Employee Grievance form,[18] which she did.[19]

---

[13]Id. at 37:1-8.

[14]Id. at 35:6-11.

[15]Affidavit of Vickie Holcomb at 2, ¶¶ 3-5, Exhibit 4, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[16]Id. at ¶ 6.

[17]Id. at ¶¶ 7 & 9.

[18]Id. at ¶ 10.

[19]Exhibit A, Holcomb Affidavit, Exhibit 4, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

Latoski avers that he met with the other two employees, Lori Brown and Debbie Keller, on August 9, 2013.[20] Brown, who was an office assistant, avers that plaintiff "once put his arms around my shoulders" and that "[p]laintiff would also occasionally wink at me."[21] Keller, who was the computer coordinator, avers that plaintiff "put his hands on my shoulders two times" during "a training session on computer programs."[22]

Latoski avers that he believed Holcomb's, Keller's, and Brown's complaints because "[e]ach woman who submitted a complaint was from a different division of Mohave County and supervised by a different manager" and because "each woman had been a well-respected employee of Mohave County for many years."[23] Latoski avers that Holcomb was so upset that she was "brought to tears" while "relaying her experiences with [p]laintiff."[24]

Plaintiff testified, however, that he was told by Greg Arnold, another County employee, that there was an "old guard of certain women within the county [who] had a

---

[20]Latoski Affidavit at 3-4, ¶¶ 17-18, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[21]Affidavit of Lori Brown at 1-2, ¶¶ 2 & 6, Exhibit 5, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[22]Affidavit of Debbie Keller at 1-2, ¶ 2 & 6, Exhibit 6, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[23]Latoski Affidavit at 4, ¶ 20, Exhibit 1, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[24]Id.

... collaboration, and they would use that collaboration to intimidate men and get their way."[25] Plaintiff testified that he believed that the three women "collaborated" to come up with their stories about him.[26] Plaintiff also testified that Arnold told him that Holcomb also had complained about Arnold violating her personal space.[27]

Latoski terminated plaintiff on August 9, 2013. Latoski avers that he "was the ultimate decision-maker concerning [p]laintiff's termination", although he advised Ray Osuna that he was going to terminate plaintiff.[28] Latoski avers that he terminated "[p]laintiff's employment ... based both on [p]laintiff's unpermitted use of his County-issued vehicle and the complaints received by Ms. Holcomb, Ms. Brown, and Ms. Keller."[29] Latoski avers that based on these two issues, he "found that [p]laintiff did not successfully complete his probationary period."[30]

Plaintiff testified that the termination letter he was given stated that he "didn't perform my work properly" but that Latoski told him he was being terminated because of

---

[25] Nixon Deposition at 40:9-13, Exhibit 2, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[26] Id. at 40:18-22.

[27] Id. at 37:20-24.

[28] Latoski Affidavit at 4, ¶¶ 21-22, Exhibit 1, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[29] Id. at ¶ 19.

[30] Id.

the reports that he had "grabbed women inappropriately."[31] Plaintiff testified that the issue with his County vehicle "was never brought up, it was never mentioned, and they didn't run the report until about 4:00 that afternoon."[32] Plaintiff testified that his use of the County vehicle was first brought up during a second-level appeal "with the State of Nevada for my unemployment benefits."[33] Plaintiff also testified that about two weeks prior to his termination, Arnold told him that he was going to be perceived as a threat by other employees, including Latoski, "[b]ecause I was so efficient at doing my job."[34]

Greg Arnold was hired to replace plaintiff as engineering manager.[35]

On September 12, 2013, plaintiff filed a charge of discrimination with the EEOC, alleging that he had been terminated because of his gender.[36] The EEOC issued a right to sue letter on December 13, 2013.[37]

---

[31] Nixon Deposition at 42:22-43:7, Exhibit 2, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[32] Id. at 43:25-44:2.

[33] Id. at 44:11-15.

[34] Id. at 46:4-16.

[35] Latoski Affidavit at 4, ¶ 23, Exhibit 1, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

[36] Complaint at 2, ¶ 6, Docket No. 1.

[37] Id.

Defendant now moves for summary judgment on plaintiff's Title VII claim, the only claim remaining in this case.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

"Title VII prohibits employers from discriminating against 'any individual with respect to ... compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.'" Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir.

2004) (quoting 42 U.S.C. § 2000e-2(a)(1)). "In order to prevail on a Title VII disparate treatment sex discrimination claim, an employee need only establish that, but for his or her sex, he or she would have been treated differently." Id.

> In responding to a summary judgment motion in a Title VII disparate treatment case, a plaintiff may produce direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendant's decision, or alternatively may establish a prima facie case under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green[.]

Dominguez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).

The only evidence that could possibly be considered direct evidence of discrimination is plaintiff's testimony that Greg Arnold told him that the three women were in some kind of conspiracy to intimidate male employees. But plaintiff's testimony is insufficient to create a triable issue of fact. Plaintiff has offered nothing to corroborate his testimony. He has offered no declaration or affidavit from Greg Arnold. While "[s]pecific testimony by a single declarant can create a triable issue of fact, ... the ... court ... need not find a genuine issue of fact if, in its determination, the particular declaration was 'uncorroborated and self-serving.'" F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010) (quoting Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002)). The problem here is not, as defendant suggests, that Arnold's statements are hearsay because that problem could be remedied at trial if Arnold were to testify. See S. Calif. Darts Ass'n v. Zaffina, 762

F.3d 921, 925-26 (9th Cir. 2014) (quoting Fraser v. Goodale, 342 F.3d 1032, 1036–37 (9th Cir. 2003)) ("Evidence may be offered 'to support or dispute a fact' on summary judgment only if it 'could be presented in an admissible form at trial.'"). The problem here is the only evidence in the record that Arnold made these statements is plaintiff's self-serving argument, which is not sufficient to create a triable issue of fact.

There is also no circumstantial evidence here that suggests that plaintiff was terminated because he was male. Plaintiff speculates that the complaints of the three women "would never have seen the light of day" if he "were a woman[.]"[38] But, speculation cannot create a genuine issue of material fact. Karam v. City of Burbank, 352 F.3d 1188, 1194 (9th Cir. 2003).

Because there is no direct or circumstantial evidence of gender discrimination, the court analyzes plaintiff's disparate treatment claim under the McDonnell Douglas framework. "Under this analysis, plaintiff[] must first establish a prima facie case of employment discrimination." Hawn v. Exec. Jet Management, Inc., 615 F.3d 1151, 1155 (9th Cir. 2010). "If plaintiff[] establish[es] a prima facie case, '[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.'" Id. (quoting Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123–24 (9th Cir. 2000)). "If defendant meets this burden, plaintiff[] must

---

[38]Nixon Deposition at 45:7-11, Exhibit 2, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

then raise a triable issue of material fact as to whether the defendant's proffered reasons for [his termination are] mere pretext for unlawful discrimination." Id.

"To establish a prima facie case under McDonnell Douglas, a plaintiff must demonstrate that: (1) he belonged to a protected class; (2) he was qualified for his job; (3) he was subjected to an adverse employment action; and (4) similarly situated employees not in his protected class received more favorable treatment." Anthoine v. N. Central Counties Consortium, 605 F.3d 740, 753 (9th Cir. 2010). It is undisputed that plaintiff was a member of a protected class, that he was qualified for his job, and that he was subjected to an adverse employment action.

As for the fourth element, plaintiff has presented no evidence that similarly situated female employees received more favorable treatment. At his deposition, plaintiff appeared to suggest that Holcomb was given more favorable treatment because she was not terminated for harassing McKenna.[39] But, Holcomb was not similarly situated to plaintiff. "'[I]ndividuals are similarly situated when they have similar jobs and display similar conduct.'" Hawn, 615 F.3d at 1157 (quoting Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003)). "Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees." Vasquez, 349 F.3d at 641. Plaintiff was Holcomb's supervisor and there is no evidence that they had the same job duties. Plaintiff

---

[39]Nixon Deposition at 47:6-13, Exhibit 2, Defendant Mohave County's Statement of Facts in Support of its Motion for Summary Judgment, Docket No. 54.

could also have made out the fourth element of his prima facie case by showing that his position was filled by a female. Villiarimo, 281 F.3d at 1062. However, it is undisputed that plaintiff's position was filled by another male. Thus, plaintiff cannot satisfy the fourth element of a prima facie case.

But even if plaintiff had made out his prima facie case, which he has not, defendant has articulated legitimate, nondiscriminatory reasons for terminating plaintiff. Defendant claims that it terminated plaintiff because he violated defendant's rules regarding the use of County vehicles and because three fellow employees made complaints against him. These are legitimate reasons for terminating an employee.

The burden would then shift to plaintiff to show that these reasons were pretext. "To show pretext, the plaintiff can produce direct evidence showing that 'the discrimination more likely motivated the employer' or indirect evidence showing that 'the employer's explanation is unworthy of credence.'" White v. AKDHC, LLC, 664 F. Supp. 2d 1054, 1069 (D. Ariz. 2009) (quoting Vasquez, 349 F.3d at 641). "Direct evidence consists of clearly racist or discriminatory statements or actions by the employer, and very little direct evidence is required to raise a genuine issue of material fact." Id. (citing Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1095 (9th Cir. 2005)).

The only possible direct evidence is plaintiff's testimony that Greg Arnold told him that the three women were in some kind of conspiracy to intimidate male employees. But,

as discussed above, plaintiff's self-serving, uncorroborated argument is insufficient to create a triable issue of fact.

Plaintiff also not presented sufficient indirect evidence to create a triable issue of fact as to pretext because this case involves the same actor inference. "'[W]here the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory motive.'" Id. (quoting Bradley v. Harcourt, Brace & Co., 104 F.3d 267, 270–71 (9th Cir. 1996)). It is undisputed that Latoski both hired and fired plaintiff within the span of less than two months. "[P]laintiff must therefore make an 'extraordinarily strong showing of discrimination' to rebut the presumption and avoid summary judgment." Id. (quoting Coghlan, 413 F3.d at 1097).

Plaintiff has made no such showing. Plaintiff seems to suggest that defendant gave inconsistent reasons for his termination because the letter that he was given said he was being terminated for not doing his job but he was told that he was being terminated based on the complaints of the three women. But, plaintiff has not produced the letter and his uncorroborated, self-serving argument about what the letter said is not sufficient to create triable issue of fact. Plaintiff also contends that the vehicle issue was not raised until later, but even if that were true, that is not an inconsistent reason. Plaintiff could have been terminated both because of the complaints from his co-workers and because he had failed

to comply with County's vehicle policy.  Giving an additional reason for an employee's termination is not the same thing as changing the reason.  Defendant has consistently maintained that plaintiff was terminated because of the complaints from his co-workers.

## Conclusion

Defendant's motion for summary judgment[40] is granted.  The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 21st day of April, 2015.

/s/ H. Russel Holland
United States District Judge

---

[40]Docket No. 53.